[Crim. No. 1282. First Appellate District, Division One.—May 18, 1926.]

THE PEOPLE, Respondent, v. WILLIAM R. SMITH, Appellant.

[1] CRIMINAL LAW—ROBBERY—PLEADING—EVIDENCE—VARIANCE.—In a prosecution for robbery, a charge in the indictment that defendant robbed a designated person of a specified sum of money, the personal property of said person, and proof that the money belonged to the employer of said person, but was in his possession at the time of the robbery, and that defendant robbed him of the same while on his way to deposit the money in the bank, do not constitute a fatal variance.

[2] ID.—IDENTITY OF OFFENSE—VARIANCE.—It is sufficient to sustain a charge of robbery if the property feloniously and forcibly taken from the person of another belonged to any person other than the defendant; and under section 956 of the Penal Code an erroneous allegation as to ownership of the property is immaterial, if the offense is otherwise described with sufficient certainty to identify the act of robbery, the identity of the act of robbery being the same no matter upon whom the injury involved in the larceny which is included in the robbery might fall.

[3] ID.—EVIDENCE — CONVERSATION WITH DEFENDANT — STATEMENT OF WIFE—INSTRUCTIONS.—In this prosecution for robbery, defendant's contention that the trial court erred in permitting a police officer

---

1. See 22 Cal. Jur. 841, 851.
2. See 22 Cal. Jur. 851.

to relate to the jury a conversation which took place with defendant regarding a statement made by defendant's wife as to the deposit by defendant with his mother of certain money was without merit, where such testimony was, on defendant's motion, stricken out and the jury was instructed at the conclusion of the evidence that it should disregard and discard every impression or idea suggested by questions as to which objections had been sustained, and that it should not consider evidence which had been excluded by the court.

[4] ID.—ACCUSATORY STATEMENT OF PARENTS.—In such prosecution for robbery, it was not error to admit in evidence a written statement made by defendant's mother and father accompanying the return of the money given to them by defendant, as it was necessary and proper for the prosecution to reveal the contents of such statement for the purpose of showing defendant's passive conduct in the face of such accusatory statement.

---

(1) 34 Cyc., p. 1805, n. 54.   (2) 34 Cyc., p. 1803, n. 46, p. 1805, n. 54.   (3) 17 C. J., p. 328, n. 6.   (4) 16 C. J., p. 631, n. 68; 17 C. J., p. 211, n. 6.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. J. Trabucco, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Nathan C. Coghlan and Austin Arnold for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

KNIGHT, J.—An appeal by defendant from a judgment of conviction of first degree robbery and from an order denying his motion for a new trial. The sufficiency of the evidence upon which the conviction is based is not questioned, but appellant urges as grounds for reversal that there was a fatal variance between the allegations of the indictment and the proof in regard to the ownership of the property stolen from the victim of the robbery, and that the court erred in ruling upon the admissibility of certain evidence offered and received on behalf of the prosecution.

---

4. See 8 Cal. Jur. 103.

[1] The indictment charged appellant with having robbed one Wilbur A. Johnson of the sum of $17,996, "the personal property of said Wilbur A. Johnson." The evidence proved that the money belonged to the Pacific Gas and Electric Company, a corporation, by whom Johnson was employed, but was in Johnson's possession at the time of the robbery, and that he was robbed of the same while on his way to deposit the money in the bank. The variance complained of was immaterial. [2] It is sufficient to sustain a charge of robbery if the property feloniously and forcibly taken from the person of another belonged to any person other than the defendant; and under section 956 of the Penal Code an erroneous allegation as to ownership of the property is immaterial, if the offense is otherwise described with sufficient certainty to identify the act of robbery, the identity of the act of robbery being the same no matter upon whom the injury involved in the larceny which is included in the robbery might fall. (*People* v. *Anderson,* 80 Cal. 205 [22 Pac. 139]; *People* v. *Nelson,* 56 Cal. 77; *People* v. *Clark,* 106 Cal. 32 [39 Pac. 53].)

The robbery occurred on the sidewalk on December 4, 1924, soon after Johnson had left the company's building on Sutter Street and was proceeding toward the bank, accompanied by another employee of the same company. Johnson was carrying the money, consisting of currency and silver, and also a parcel containing twenty-three $1,000 bonds, belonging to said company. He had gone only a short distance when he was robbed of the money and bonds by three men, two of whom brandished pistols, and after striking Johnson on the head, felling him to the sidewalk, fled through an alley, scaled a wall and entered an automobile, but in climbing the wall dropped the package containing the bonds. After entering the automobile, the robbers followed a circuitous route, and in their flight fired several shots at their pursuers. They finally abandoned their automobile and disappeared. The automobile, it was discovered, was owned and registered in the name of appellant's wife, Mrs. R. Smith, 272 Faxon Avenue, San Francisco. About two hours after the robbery Mrs. Smith was summoned from her home to a neighbor's telephone and after holding a brief conversation over the phone returned hurriedly to her home, stayed there a few minutes, departed and did not

return.   Appellant and his wife were eventually traced to
the residence of appellant's mother in Chicago, where they
were arrested on December 27, 1924, and placed in the
Chicago jail.   While in jail there appellant made a full
and complete confession, which was afterward used against
him at the trial.   In that confession he related the details
of the commission of the crime by himself and his two com-
panions, the circumstances showing that it had been care-
fully planned and the manner in which he and his wife
had made their escape to Chicago.   Afterward and during
the trial he attempted to repudiate the confession, claiming
that the same was obtained through duress and as a result
of physical violence inflicted upon him by members of the
Chicago police department.

At the trial Officer William McMahon of the San Fran-
cisco police department testified that following the arrest
he went to Chicago and talked with Mrs. Smith while she
was being detained in the Chicago jail.   The purport of this
conversation he was not allowed to reveal, but he further
testified that soon afterward he held a conversation with
appellant regarding which the witness was interrogated as
follows: "Q. Tell us what was said between you, and tell
us who was present.   A. There was just the defendant and
I present; I asked him for an order to his mother for the
$2,000 which I had gained information that he had given
his mother.   Mr. Coghlan (counsel for appellant): I move
that be stricken out as hearsay . . . The Court: The last
portion may go out; information that he had gained from
his mother (doubtless meaning his wife) that may go out,
and you may proceed with your answer.   A. And he refused
to give me the order.   Q. Did you say anything to him
about having any information of money lodged with his
mother—deposited with his mother?   A. I did.   Q. What
did you tell him and what did he say to you in answer?
A. I told him that his wife told me . . . he had given his
mother $2,000, and he said to me, 'If that dame told you
that she's crazy.' "   Thereupon counsel for appellant, who
had already objected to the witness relating any portion of
the statement made by appellant's wife, moved to strike
out the answer.   After some discussion the court ruled that
appellant's objection be sustained, counsel for the People
remarking at the time: "Very well.   Now, then, that matter

is stricken out then?" To which the court replied: "Yes, that may go out; the latter portion." The testimony given by Officer McMahon further shows that afterward he obtained from appellant's mother $1,580 in cash and a written statement signed by her and her husband, reading as follows: "January 3, 1925. The $1580 that was turned over to William McMahon at 2849 North Racine Avenue, Chicago, was left here at my home by my son William Schmidt (which was appellant's true name) about three weeks ago. At that time there was about $2,000 out of which at various times he took the difference." The testimony of McMahon further shows that after appellant had been brought back to San Francisco he was asked if he had given any money to his mother or to anybody else in Chicago for safekeeping and he replied that he had not; that he was then asked: "Then if your mother says you did she is mistaken?" and he answered that she was; that he, McMahon, then exhibited to the appellant the $1,580 in cash and the written statement obtained by him from appellant's mother and father, and asked appellant how he accounted for them, to which he made no reply. The money and the written statement, after being properly identified, were offered and received in evidence over appellant's objection. Appellant became a witness in his own behalf and testified in substance that he had not participated in the robbery, but was intimately acquainted with James F. Ryan, one of the three men charged with the offense, whom he knew to be an ex-convict, and who at the time of the trial was a fugitive from justice; that Ryan had borrowed Mrs. Smith's automobile on the morning of the robbery, and shortly after the noon hour, which was subsequent to the robbery, Ryan met appellant on the street by telephone appointment, and told him that the automobile had broken down and was to be found at a certain garage; that at the same time Ryan paid to him the sum of $2,500 in cash in liquidation of a gambling debt; that soon afterward appellant learned of the robbery through the evening newspapers, and having learned also that his wife's automobile had been used in the perpetration of the crime, became terrified and with his wife left San Francisco that night for Los Angeles, later going to Chicago. He further testified that when he left San Francisco he had in his possession, besides the $2,500 paid to him by Ryan, the

sum of $400. Upon cross-examination he was asked: "And you spent about $900 in Los Angeles for wearing apparel which would reduce that amount to $2,000, is that right?" His response was: "I guess that is correct, yes." He was then asked: "Did you give to your mother $2,000?" and he answered: "Well, I don't remember the exact amount."

[3] Appellant contends that it was error for the trial court to permit McMahon to relate to the jury the conversation which took place with appellant regarding the statement made by appellant's wife as to the deposit of the money with appellant's mother; that it was in effect allowing appellant's wife to testify against him in violation of section 1322 of the Penal Code and subdivision one of section 1881 of the Code of Civil Procedure. The point is without merit. The record shows quite clearly that the testimony complained of was, on appellant's motion, stricken out, and that the jury was instructed at the conclusion of the evidence that it should disregard and discard every impression or idea suggested by questions as to which objections had been sustained, and that it should not consider evidence which had been excluded by the court. The words "the latter portion" which were included in the court's second ruling striking out the objectionable testimony when fairly interpreted in the light of the previous ruling of the court excluding the same testimony, could have referred to no other matter than the information imparted to McMahon by appellant's wife.

[4] Neither was it error, as appellant claims, to admit in evidence the written statement made by appellant's mother and father accompanying the return of the money. For the purpose of showing appellant's passive conduct in the face of an accusatory statement it was necessary and proper for the prosecution to reveal the contents of the statement. (*People* v. *Ong Mon Foo,* 182 Cal. 697 [189 Pac. 690]; *People* v. *Ayhens,* 16 Cal. App. 618 [117 Pac. 789].)

Moreover, we believe that appellant is not in a position to complain of the admission in evidence of the statements made by his wife and by his mother and father regarding the delivery of the money to his mother, for the reason that while testifying in his own behalf, in response to a direct question, he did not deny having given the money to his mother, but stated that he was not sure of the amount.

It is our opinion that the record is free from error. The judgment and order appealed from are therefore affirmed.

Tyler, P. J., and Cashin, J., concurred.