GEORGE H. AVERILL vs. BENJAMIN P. CHADWICK.

Essex.   November 8, 1890. — January 14, 1891.

Present: FIELD, C. J., W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Game Laws — Seizure without a Warrant — Conversion.*

A deputy of the game commissioners, who, acting under their orders merely, and intending to enforce the game laws, but without any warrant or an order from any court, seizes game unlawfully exposed for sale, is liable to the person in illegal possession thereof for its conversion.

TORT for the conversion of two rabbits.

At the trial in the Superior Court, before *Pitman*, J., there was evidence tending to show the following facts: The plaintiff kept a provision store in Salem, and on March 2, 1889, exposed therein a pair of rabbits for sale.   The defendant came to the store, and, after looking at the rabbits, told the plaintiff that he was an officer and should have to take them away.   The plaintiff supposed from this statement that he was an officer, and, as he testified, let the defendant "take them; I did not give them to him or sell them; he [the defendant] said he should take them away, and he took them away."   The defendant was a deputy of the board of game commissioners, and had no further authority either as a constable or otherwise.   He acted upon the occasion in question under a direction of the game commissioners, to seize and remove all game unlawfully offered for sale. He had no warrant and had received no order from any court to make the seizure, and his purpose was, as he testified, "to enforce the law as I understood the statute."

The judge ruled that there was no question of fact for the jury, and ordered a verdict for the plaintiff; and the defendant alleged exceptions.

*F. L. Evans*, for the defendant.

*N. J. Holden*, for the plaintiff.

BY THE COURT.   The following opinion was prepared by Mr. Justice DEVENS, and was adopted as the opinion of the court after his death by the Justices who sat with him at the argument.

We have no occasion to consider whether the rabbits, for the conversion of which this action is brought, were unlaw-

fully exposed for sale in violation of the St. of 1886, c. 276, § 5, nor whether, upon proper proceedings had, they might have been adjudged to be forfeited. Without so deciding, we assume these positions in favor of the defendant's contentions. His own statement, which in the present posture of the case must be taken as correct, does not show him to have been either a constable or police officer, even if these officers could have made a seizure of the property without a warrant, which again we do not intend to decide. He was a deputy of the board of inland fisheries and game commissioners, and he stated that he had orders from them to seize and remove whatever of this nature was offered for sale unlawfully. He did not pretend that he had orders from any court, or any warrant, but took the rabbits to destroy them. It is quite clear that neither the commissioners nor their deputy could, without power, seize, remove, and destroy property, even though the same was unlawfully exposed for sale. No right to do this is given by the statute, nor is any authority cited to us which justifies it.

Even if the taking of the rabbits was unlawful, yet, the possession of them being illegal, it is the contention of the defendant that the plaintiff cannot avail himself of this illegal possession to maintain the action. In *Commonwealth* v. *Rourke,* 10 Cush. 397, it is held to be well established at common law that property unlawfully acquired may, nevertheless, be the subject of larceny ; and it is said that " even he, who larceniously takes the stolen object from a thief whose hands have but just closed upon it, may himself be convicted therefor, in spite of the criminality of the possession of his immediate predecessor in crime." In *Commonwealth* v. *Coffee,* 9 Gray, 139, where the article stolen was intoxicating liquor, purchased in violation of the statute of Massachusetts, and intended to be sold in violation of the act, it was held to be the subject of larceny. Even, therefore, if, as we have assumed in the case at bar, the plaintiff might have forfeited and lost his property if it had been seized upon proper legal process, and it had appeared that it was kept for an illegal purpose, he was only to be deprived of it upon such proof, and by the methods which the law points out. In the plaintiff's hands the rabbits were still property, even if unlawfully kept for sale. If deprived of them by a wrongful seizure, the party taking them should be made responsible to him for their value.

The defendant further contends, that he was entitled to have the case submitted to a jury; but it was correctly ruled that there was no question of fact for the jury.   There was no evidence of any assent by the plaintiff to the taking which could justify it.   He yielded without resistance to the defendant's statement that it was his duty to take them, that he was ordered so to do by the game commissioners, and that he should make a record and destroy them; but because he thus yielded, he gave no consent from which any authority to do the act which the defendant did can be implied.   Nor does the defendant, in his evidence, rely on any such consent, as he says he took them "to enforce the law as I understood the statute."

*Exceptions overruled.*